IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES TURNER,

                                                  OPINION and ORDER

                Plaintiffs,

                                             12-cv-699-bbc

         v.

GARY HAMBLIN, MICHAEL MEISNER,
CHARLES COLE, CHARLES FACKTOR,
JOANNE LANE, TIM DOUMA, DIANA KIESLING,
MARK TESLIK, CAMPBELL,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff James Turner is proceeding on a claim that various officials at the Columbia Correctional Institution violated his rights under the free exercise clause of the First Amendment by failing to provide services to Muslim prisoners for Jumuah and Taleem when an outside volunteer was not available to lead the service.  Defendants have filed a motion for summary judgment, dkt. #34, which is ready for review.  In addition, both sides have filed dueling motions to "strike" summary judgment briefs filed by the other side.  Dkt. ##57 and 58.  I am denying both motions to strike as unnecessary because the outcome of the motion for summary judgment would not change regardless whether I consider the arguments in the disputed briefs.

Defendants raise a number of arguments in support of their motion for summary judgment, but I need only address one of them, which is that defendants are entitled to

1

qualified immunity because the law is not clearly established that the free exercise clause requires prison officials to hold religious services for prisoners if no qualified nonprisoners are available to lead the service.  Humphries v. Milwaukee County, 702 F.3d 1003, 1006 (7th Cir. 2012)("[A] court may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law without first resolving whether the purported right exists.").  Magistrate Judge Stephen Crocker reached the same conclusion in three recent cases brought by prisoners under the free exercise clause challenging the "nonprisoner volunteer" requirement in the context of group religious services.  West v. Grams, 11-cv-687-slc (W.D. Wis. Nov. 8, 2013); Kramer v. Wisconsin Dept. of Corrections, 10-cv-224-slc (W.D. Wis. Jul. 26, 2011); Liebzeit v. Thurmer, 10-cv-170-slc (W.D. Wis. June 13, 2011).  West was a Muslim prisoner; Kramer and Liebzeit were Odinists.

In each of the three cases, Magistrate Judge Crocker cited  Johnson-Bey v. Lane, 863 F.2d 1308, 1310-11 (7th Cir. 1988), in which the court stated that prison officials "need not . . . allow inmates to conduct their own religious services, a practice that might not only foment conspiracies but also create (though more likely merely recognize) a leadership hierarchy among the prisoners," and Hadi v. Horn, 830 F.2d 779, 784-85 (7th Cir. 1987), a case in which the court rejected a claim that Muslim prisoners were entitled to lead their own services when chaplain or volunteer was not available. In addition, Magistrate Judge Crocker cited cases from other circuits in which courts upheld similar policies.  Adkins v. Kaspar, 393 F.3d 559, 565 (5th Cir. 2004) (upholding prison requirement that volunteer must supervise religious services); Tisdale v. Dobbs, 807 F.2d 734, 738-39 (8th Cir. 1986)

(same).  See also Baranowski v. Hart, 486 F.3d 112, 120–22 (5th Cir. 2007) (affirming summary judgment in favor of prison on Jewish prisoner's free-exercise claim where prisoner sought inmate-led services in the absence of a rabbi or approved volunteer); Spies v. Voinovich, 173 F.3d 398, 402, 405–06 (6th Cir. 1999) (affirming summary judgment in favor of prison on Zen Buddhist prisoner's free-exercise claim and approving prison's prohibition on inmate-led services).  The Court of Appeals for the Seventh Circuit affirmed Kramer in relevant part, stating, "[g]iven the precedents . . . permitting prison administrators to deny group worship where no volunteer or chaplain is readily available to lead services, a reasonable government official would not have known the official was violating clearly established law by refusing Kramer's requests for . . .  group worship."  Kramer v. Pollard, 497 F. App'x 639, 642-44 (7th Cir. 2012).

The legal landscape has not changed since Kramer, which did not undermine Johnson-Bey, Hadi or any other of the cases cited above.  In fact, plaintiff does not cite any cases in which a court found in favor of a prisoner on this issue under the free exercise clause.

In this case, defendants rely on the same security justifications cited in the other cases for canceling services when a nonprisoner volunteer is not available to lead them.  Plaintiff challenges the testimony of the witness who articulates these concerns (Lucas Weber, the current security director for the Columbia prison) on the grounds that he was not employed at the prison during the events relevant to the case and defendants never identified the witness as an expert.  Of course, even if a prison official was not involved in the events of a particular lawsuit, he may still rely on personal knowledge he has acquired through his own

experience.  Fed. R. Evid. 701 (nonexpert witness may give opinion that is "rationally based on the witness's perception").  In any event, even if Weber's testimony is improper expert testimony, I do not see how it makes any difference because the opinions he gives are simply restatements of the same opinions that courts have concluded are reasonable in many cases, so I see no reason to require expert testimony in this case.

Plaintiff challenges the reasonableness of a conclusion that the requirement of a nonprisoner volunteer serves a legitimate security interest, arguing that "[o]nly an imbecile and/or an individual that is willing to reach into the land of make believe" would accept defendants' view.  Plt.'s Br., dkt. #49, at 23.  However, he simply ignores all the authority going against him.  Regardless whether plaintiff agrees with the law, I am bound by it.

Plaintiffs makes a narrower argument that Muslim prisoners should be allowed to congregate to recite the Jumuah prayer because it does not require a leader, but this argument too has been squarely rejected by the Court of Appeals for the Seventh Circuit:

> The plaintiffs argue that the security rationale may justify forbidding inmates to give the Jumah sermon but this rationale does not explain why inmates may not lead the prayer portion of Jumah. We reject this approach because, although it might avoid doctrinal disputes, it still places an inmate in a position of authority over other inmates in the context of a religious service. As another alternative, the plaintiffs suggest that the defendants should have permitted the services if a chaplain of any denomination were present to supervise them. This suggestion, however, does not fully meet the defendants' security concerns. A Muslim chaplain is in a better position to resolve doctrinal disputes that might arise at a service than is a chaplain of another denomination with only limited exposure to the tenets of Islam.

Hadi, 830 F.2d at 786-87.  Again, plaintiff simply ignores this law.

Alternatively, plaintiff makes various arguments in an attempt to show that

defendants' policy is discriminatory.  In his proposed findings of fact, he lists instances between July 2007 and January 2011 in which Muslim services were canceled but Christian services were not and he asks, "isn't it only fair that the Christian Religion Practitioners here at CCI also be denied Congregation Services every time such services are denied Muslim prisoner(s)?"  Plt.'s Br., dkt. #49, at 27.

Although plaintiff's frustration over being denied the ability to attend religious services on many occasions is understandable, his theory of discrimination has no basis in the law.  If defendants were allowing Christian prisoners to lead their own services, that would be evidence of discrimination in violation of the free exercise clause.  Cf. Grayson v. Schuler, 666 F.3d 450, 453 (7th Cir. 2012) (rule that allowed prisoners of some religious groups to wear dreadlocks but prohibited others violated free exercise clause). However, plaintiff cites no evidence that Christians or any other religious group are allowed to hold services even when a nonprisoner volunteer is unavailable or that defendants otherwise have applied their rule differently to different religious groups.

It does not violate the free exercise clause for prison officials to allow other religious groups to continue having services simply because a nonprisoner volunteer is not available to lead services for one religious group in particular.  If that were the case, all religious services would have to be canceled any time officials could not locate a nonprisoner volunteer for two or more prisoners who wished to hold group services, no matter how small the sect or how difficult it was to find a volunteer.  In other words, adopting plaintiffs' proposed rule likely would eliminate all group worship in the prison context.

5

Plaintiff argues throughout his briefs that defendants' rule has a "disparate impact" on Muslim prisoners. Although that might be true, that is not the test under the free exercise clause. The situation was the same in West, Kramer and Liebzeit, but that was not enough to overcome a qualified immunity defense. Almost any prison rule is likely to affect some religions more than others, but so long as the justification for the rule is reasonable and is not *intended* to target a particular religious group, it does not violate the Constitution, under either the free exercise clause or the equal protection clause. Maddox v. Love, 655 F.3d 709, 719-20 (7th Cir. 2011); Bond v. Atkinson, 728 F.3d 690, 692-93 (7th Cir. 2013). (Although I did not allow plaintiff to proceed on a claim under the equal protection clause, he relies on it throughout his summary judgment briefs. Because it makes no difference to the outcome of the case, I need not decide whether plaintiff adequately pleaded an equal protection claim.) Plaintiff alleges throughout his summary judgment briefs that defendants created the rule to target Muslim prisoners, but he cites no evidence to support that allegation. In fact, he devotes every one of his proposed findings of fact to showing the times that Muslim services have been canceled at the Columbia prison. By themselves, those cancellations do not show that the rule is discriminatory.

If defendants were trying intentionally to prevent nonprisoner Muslim volunteers from coming to the prison or if they were making greater efforts to find nonprisoner volunteers for nonMuslim religious groups, that could support a free exercise claim. However, it is undisputed that the Columbia officials *have* located multiple volunteers to lead Muslim services in recent years, Plt.'s Resp. to Dfts.' PFOF ¶ 44, dkt. #52, and that

defendant Mark Teslik, the prison chaplain, has been in contact with at least a dozen other Islamic organizations and individuals in an attempt to locate additional volunteers. Id. at ¶ 51. Although it is also undisputed that there have been many weeks when no volunteers were available (plaintiff counts 128 weeks between July 2007 and January 2011), plaintiff cites no evidence that the lapses were caused by interference by one or more defendants rather than the schedules of the volunteers.

Next, plaintiff argues that the department should have hired a Muslim chaplain to work at the Columbia prison so that it did not have to rely on volunteers. E.g., id. at ¶ 42. (Defendant Teslik, the chaplain at the Columbia prison, is a Protestant. Teslik Aff. ¶ 16, dkt. #38). However, the Supreme Court held long ago that the free exercise clause does not require prisons to employ chaplains of every faith. Cruz v. Beto, 405 U.S. 319, 322 (1972) ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand."). See also Al-Alamin v. Gramley, 926 F.2d 680, 687 (7th Cir. 1991) (rejecting argument that prison was required to hire Imam if it employed a Christian chaplain). There might be some situations in which a failure to employ a chaplain could constitute religious discrimination, e.g., Lucero v. Hensley, 920 F. Supp. 1067, 1074 (C.D. Cal. 1996), but plaintiff has not adduced any evidence regarding the reasons that the Columbia prison does not have a Muslim chaplain (or even who was responsible for making the hiring decision), so that argument goes nowhere.

Finally, plaintiff argues that the court should consider whether defendants' conduct

violated the Religious Land Use and Institutionalized Persons Act, which employs a stricter

standard of review.  42 U.S.C. § 2000cc-1(a); <u>Borzych v. Frank</u>, 439 F.3d 388, 390 (7th Cir.

2006).  That argument is a nonstarter because plaintiff voluntarily dismissed his RLUIPA

claim after I asked him to specify the relief he was seeking on that claim.  Dkt. ##12 and

13.  Plaintiff says that he did not mean to dismiss his RLUIPA claim as it relates to

declaratory relief, but he cites no language from any of his previous filings that would

support such a view and he did not seek reconsideration or clarification after I dismissed the

claim.

In any event, plaintiff does not identify any basis for seeking declaratory relief on his

RLUIPA claim.  Generally, a declaration serves as a predicate to an injunction or a damages

award, <u>Bontkowski v. Smith</u>, 305 F.3d 757, 761 (7th Cir. 2002), but plaintiff has never

identified any injunctive relief he wants (and he could not because the last cancellation he

identifies occurred three years ago, <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102 (1983)),

and money damages are not available under RLUIPA.  <u>Vinning-El v. Evans</u>, 657 F.3d 591,

592 (7th Cir. 2011).


ORDER

IT IS ORDERED that

1.  Plaintiff James R. Turner's motion to strike, dkt. #57, is DENIED as unnecessary.

2.  The motion to strike filed by defendants Gary Hamblin, Michael Meisner, Charles

Cole, Charles Facktor, Joanne Lane, Tim Douma, Diana Kiesling, Mark Teslik and Leo

Campbell, dkt. #58, is DENIED as unnecessary.

     3.  Defendants' motion for summary judgment, dkt. #34, is GRANTED.

     4.  The clerk of court is directed to enter judgment in favor of defendants and close

this case.

     Entered this 21st day of January, 2014.

                          BY THE COURT:
                          /s/
                          BARBARA B. CRABB
                          District Judge